## WILDMAN MFG. CO. v. ADAMS TOP CUTTING MACH. CO.

(Circuit Court of Appeals, Third Circuit. November 20, 1906.)

No. 16.

CONTRACTS—BREACH—IMPLIED CONDITION.

> A contract by which one party was constituted the sole manufacturer and the sole sales agent for a machine under a patent owned by the other, and required to manufacture and have ready for delivery at least 50 machines each year, provided there was sale for such number, placed upon such agent by implication the duty of exercising reasonable diligence in endeavoring to market the machines, and rendered it liable for a breach of the contract if by reason of its failure to do so the required 50 machines were not manufactured and sold each year.

In Error to the Circuit Court of the United States for the Eastern District of Pennsylvania.

For opinion below, see 145 Fed. 576.

Dimner Beeber, for plaintiff in error.

Ellis Ames Ballard, for defendant in error.

Before DALLAS, GRAY, and BUFFINGTON, Circuit Judges.

BUFFINGTON, Circuit Judge. This is a writ of error to the Circuit Court for the Eastern District of Pennsylvania. In that court the Adams Top Cutting Machine Company brought suit against the Wildman Manufacturing Company to recover, first, the value of certain jigs, patterns, and designs, and, secondly, damages for breach by the Wildman Company of its duty as selling agent of certain knitting machines for the Adams Company. The Adams Company, being the patentee of a certain machine for cutting the tops of knit hosiery, entered into a contract with the Wildman Company on June 14, 1891, whereby the Wildman Company agreed to manufacture and sell such machines for five years. In consideration of $3,500 paid by the Adams Company, the Wildman Company agreed to make for it all the jigs, patterns, and designs required to build this machine. The money was paid and the articles manufactured. In that respect the contract provided:

"It is further agreed that said jigs, patterns, designs, etc., shall be the property of the party of the second part, but shall never be delivered to the party of the second part, and shall always be and remain in the possession of the said party of the first part, excepting, first, in the event of the voluntary

abandonment of this contract by the party of the first part within three years from the date hereof, and, second, in the event that the party of the first part shall fail to manufacture and furnish, provided there be sale for the same, fifty (50) machines each year for the first two years, unless prevented by circumstances over which it has no control. In either of the above circumstances the said jigs, patterns, designs, etc., shall be delivered over to the party of the second part."

The Adams Company averred the Wildman Company, although there was sale for the same, failed to manufacture and furnish such 50 machines yearly for each of said years, and by reason thereof it was entitled to demand, and had demanded, possession of said jigs, etc., or payment of $3,500 therefor, but the defendant refuses delivery or payment. This constitutes the first claim for damages.

As pertinent to the second claim, viz., to recover damages for breach of duty as selling agent, the contract provides:

"The party of the first part agrees to manufacture the Adams Top Cutting Machines for the party of the second part and become their sole manufacturers and sole selling agents for a period of five years, with the privileges of the party of the first part to renew this contract and extend the same for a further period of five years. * * * The party of the first part agrees to sell as agents of the party of the second part said machines, when so manufactured, at the price of seven hundred and fifty dollars ($750) f. o. b. cars at Norristown Pennsylvania, or for a price to be fixed by the party of the second part. All billheads shall contain the name of the party of the first part as sole manufacturers and sole agents for the party of the second part. * * * All selling expenses which the party of the first part may have to be borne by the party of the first part. * * * The party of the first part agrees to furnish and have made for sale, unless prevented by circumstances over which said party has no control, at least fifty (50) machines each year, provided there be sale for said number of machines. Should the party of the first part fail to manufacture and deliver one hundred machines sold or leased, unless prevented by circumstances over which said party had no control, in the first two years, then the party of the second part shall have the privilege to cancel the agreement, or take steps to place agents for the purpose of trying to increase the manufacture and sale of the machines, at their option. The party of the first part agrees to use the customary prudence and discretion in making sales, but shall not guaranty any sales, and should any losses be incurred the party of the second part agrees to pay to the party of the first part the price of manufacture, as above provided for. The party of the second part shall have the right to reject all orders of intended purchasers whose financial responsibility may be doubtful in the opinion of the party of the first part. The party of the first part agrees to make monthly reports and returns for all sales made, and liquidate monthly on the basis of such returns, and in so liquidating the party of the second part agrees to allow the party of the first part to deduct the price of manufacture and commissions, as aforesaid, on payments made on consummated sales."

The contention of the Adams Company was that defendant failed to discharge its duty as manufacturer and as selling agent, in that it did not, with due diligence and promptness, either manufacture the machines needed for sales, or sell the machines it could have sold.

It will be seen that the underlying question affecting the right of the plaintiff to recover on both these claims was the defendant's obligation as selling agent. In that respect the court said:

"Without any special provision in the contract to that effect, it is implied that the Wildman Company, having accepted the position of selling agent, and especially as being the sole selling agent, so that nobody else could put this machine on the market but itself, and to exercise reasonable diligence and care in endeavoring to market this machine."

In view of the foregoing provisions, we agree with the court below that the contract constituted the Wildman Company the selling agent of the Adams Company, and the obligation to reasonably perform all the duties incident to such a relation rested upon it. We are also of opinion the defendant had no cause to complain of the court's instructions as to its liability for damages for failure to perform its duty as such agent. Not only did the judge carefully call the jury's attention to the necessary delay in perfecting and manufacturing the device, to the difficulties incident to the introduction of a new and untried article (elements that were in defendant's favor), but he referred to the fact that, while 50 machines was the maximum which defendant could be required to make, it was not bound to manufacture any for which there was no sale. The language of the charge was:

"Their contract was that they would provide, manufacture, and have ready for delivery fifty machines a year for the first two years, provided there was a sale for the same, and that is an exceedingly important matter for the jury to consider. Taking all these matters into consideration, was there a sale for as many machines as that? Can it be said reasonably and fairly, and in view of all the evidence, that there was a market for as many machines as that? If there was, then the duty of the defendant was to supply that market. If there was no such market, their contract is not broken by their failure to furnish those machines. They were only bound to furnish the market up to that maximum. They were only bound to furnish up to a certain number of machines in case there was a sale for them. If there was only sale for twenty-five machines, they were only bound to furnish twenty-five. They were not compelled to pile up a lot of machines on their hands for which there was no sale, and which would only have to be stored in their plant. That was the reason, no doubt, that this provision was put in, that unless there was a sale for this machine, they were not compelled to market them."

So, also, in regard to the other branch of the case, viz., the right of the plaintiff to recover the value of its jigs, etc., which were in the defendant's possession. In that regard the court instructed the jury the plaintiff was not entitled to recover possession of them, or their value if possession was denied, unless there was sale for 50 machines, and the defendant failed to make them. In that respect the court said:

"It is said that the Wildman Company has failed to manufacture those fifty machines each year for the first two years, and about this there is no dispute. However, it is also said that there was a sale for these machines, and that therefore this second contingency has come to pass. You will have to determine how that is, in the light of the instructions that I shall give you hereafter upon this clause, and if you find that there was a sale for those machines, that fifty of them could have been sold for the first two years, and that the Wildman Company failed to manufacture them and furnish them as their contract called for, then this second contingency may have to come into operation, and the plaintiff may be entitled to recover the fair value of those jigs, patterns, designs, and so forth. That is the first branch of the plaintiff's claim."

We are of opinion that the construction thus placed upon this contract by the court was correct, and presumably the jury acted upon it in reaching their verdict.

The assignments of error not being sustained, the judgment of the court below is affirmed.